UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN SKIPP, ET. AL.<br>    Ms. Skipp,<br><br>v.<br><br>MARY BRIGHAM ET. AL.<br>    Defendants. | No. 3:17-cv-01224 (MPS)<br>No. 3:17-cv-01569 (MPS)<br>No. 3:17-cv-01761 (MPS) |

**Ruling and Warning of Potential Leave-To-File Injunction**

**I.    Introduction**

This ruling addresses three cases filed in this court by *pro se* plaintiff Susan Skipp ("Ms. Skipp"), all of which arise from Ms. Skipp's ongoing attempts[1] to regain custody of her children from her ex-husband: *Skipp et al. v. Brigham et al.* (17-cv-01224), *Skipp et al. v. Tittle et al.* (17-cv-01569), and *Skipp et al. v. Brigham et al.* (17-cv-01761). The cases were consolidated because they raise similar claims against different subsets of the same group of defendants. In *Skipp et al. v. Brigham et al.* (17-cv-01224), Ms. Skipp sets out sixteen counts against eighty different defendants. She alleges defendants violated: (i) Title II of the Americans with Disabilities Act ("ADA") (counts one through twelve, fourteen); (ii) Section 504 of the Rehabilitation Act ("Rehabilitation Act") (count thirteen); (iii) the Family Educational Rights and Privacy Act ("FERPA") (count fifteen); and (iv) the Civil Rights Act of 1964 ("Civil Rights Act") (count sixteen).[2] In *Skipp et al. v. Brigham et al.* (17-cv-01569), Ms. Skipp brings a claim

---

[1] The Connecticut Superior Court granted sole legal custody of Ms. Skipp's children to their father in 2012. See *Tittle v. Skipp-Tittle*, No. UWYFA104022992S, 2012 WL 5476915, at *11-12 (Conn. Super. Ct. Oct. 16, 2012), aff'd, 150 Conn. App. 64, 89 A.3d 1039 (2014)

[2] The count in question alleges sex discrimination and does not mention a source of law. Given the nature of the allegations, however, the Court construes the claim as pertaining to the Civil Rights Act. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) ("[W]e read the

under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983 against United States District Court Judge Jeffrey Meyer. Finally, in *Skipp et al. v. Tittle et al.* (17-cv-01569), Ms. Skipp petitions the court for a writ of habeas corpus enjoining defendants, Ms. Skipp's ex-husband and another, to return custody of Ms. Skipp's children to her.

Only the defendants in *Skipp et al v. Brigham et al* (17-cv-01224) have filed a motion to dismiss. Defendants Mary Brigham and Mary Brigham Law LLC move to dismiss Ms. Skipp's second amended complaint in that case under Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(4), and Fed. R. Civ. P. 12(b)(5). They also move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the defendants' motion to dismiss in that case is GRANTED. Ms. Skipp's other cases, which bring similarly deficient claims, are also DISMISSED. Finally, Ms. Skipp is hereby placed on notice that a further attempt to make any filing in this court (except a notice of appeal) related to the factual allegations raised in the complaints filed in any of these cases (i.e. *Skipp et al. v. Brigham et al.* (17-cv-01224), *Skipp et al. v. Brigham et al.* (17-cv-01761), and *Skipp et al. v. Tittle et al.* (17-cv-01569)) could result in the imposition of a leave-to-file injunction, which would prevent her from making further filings related to the allegations in these cases in this court without special permission.

## II. Plaintiff's Claims

### A. Skipp et al v. Brigham et al (17-cv-01224) (Second Amended Complaint)

#### i. ADA (counts 1-12, 14)

---

pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest.") (internal quotations omitted).

Ms. Skipp sets out thirteen counts alleging violations of the ADA and 42 U.S.C. § 12203, which prohibits retaliation, intimidation, or coercion targeted at parties that raise claims under the ADA. (ECF No. 22 at 58-106, 108-109). Each count save for one ends with the same allegation that "[a]ll defendants knew or should have known that the court had no jurisdiction to open and modify the contract that two parents signed regarding the care, custody, financial consideration (sic) of the two plaintiff minor children (sic) and such (sic) was an interference of the plaintiff mothers (sic) right to contract, such interference is prohibited by 42 USC 12203 (sic)." (*Id.* at ¶ 172, 184, 193, 217, 243, 269, 282, 283, 300). The reference to "the court" appears to refer to a 2012 Connecticut Superior Court decision that modified Ms. Skipp's custody of her children, granting sole legal custody of the children to their father. See *Tittle v. Skipp-Tittle*, No. UWYFA104022992S, 2012 WL 5476915, at *11-12 (Conn. Super. Ct. Oct. 16, 2012), aff'd, 150 Conn. App. 64 (2014). Nearly all of the defendants listed in Ms. Skipp's counts either denied her subsequent legal challenges,[3] or had some connection to Ms. Skipp's attempts to challenge the Superior Court's decision over the past five years.[4]

---

[3] Ms. Skipp lists as defendants the Connecticut Judiciary, along with various state and federal judges that ruled against her claims challenging the initial modification of her custody arrangement.

[4] Ms. Skipp has been involved in repeated litigation challenging the 2012 Superior Court decision in one way or another. *See, e.g., Tittle v. Skipp-Tittle*, 150 Conn. App. 64, 65 (2014) (appealing the 2012 decision); *Skipp v. Bozzuto*, No. UWYCV155016784S, 2015 WL 1087391, at *1 (Conn. Super. Ct. Feb. 23, 2015), reconsideration denied, No. UWYCV155016784S, 2015 WL 1426464 (Conn. Super. Ct. Mar. 9, 2015) (filing a habeas corpus claim to restore custody of her children; *Skipp v. Bozzuto*, No. UWYCV155016784S, 2015 WL 1426464, at *1 (Conn. Super. Ct. Mar. 9, 2015) (applying for reconsideration of court's denial of her habeas corpus claim); *Skipp v. Connecticut Judicial Branch*, No. 3:14-CV-00141 JAM, 2015 WL 1401989, at *1 (D. Conn. Mar. 26, 2015) (attempting to void the prior state court decisions); *Skipp v. Brigham*, No. LLICV165008059S, 2016 WL 7138684, at *1 (Conn. Super. Ct. Nov. 2, 2016) (asserting claims against the guardian ad litem appointed by the Connecticut Superior Court for Ms. Skipp's children); *Skipp v. Tittle*, No. UWYFA175018400S,

The twelfth count is the only one that does not end with the sentence noting that the defendants listed "knew or should have known" that the state court lacked the jurisdiction necessary to modify Ms. Skipp's custody of her children. (*Id.* at ¶ 302). That count, which identifies as defendants the Connecticut Chapter of the Association of Family and Conciliation Courts (CCAFCC), along with several related actors, alleges that the listed defendants "used plaintiff's family to obtain federal 'access' grants via [funding from a congressional initiative] to further discriminate against [plaintiffs]." (*Id.*).

### ii. Rehabilitation Act (count 13)

Ms. Skipp also alleges a violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq., against two judges, two states, and various actors associated with these entities. She contends that each defendant receives federal funding either "directly or indirectly," and that all of them refused to provide her with the reasonable accommodations necessary for her to take part in their judicial forums. (*Id.* at ¶ 303, 314). The complaint also avers that defendants' refusal to provide Ms. Skipp with the necessary reasonable accommodations constituted part of a pattern of discrimination against single mothers perpetrated in order to receive federal funding via the "Healthy Marriage and Responsible Fatherhood (HRMF) initiative." (*Id.* at ¶ 310).

### iii. The Family Educational Rights and Privacy Act (count 15)

Ms. Skipp contends that one Pimm Moses, an administrator at her children's elementary school, violated the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, by refusing to provide Ms. Skipp with her children's educational records. (*Id.* at ¶ 319).

### iv. The Civil Rights Act of 1964 (count 16)

---

2017 WL 778552, at *1 (Conn. Super. Ct. Jan. 31, 2017) (again filing a habeas claim in attempt to restore custody of children).

Ms. Skipp alleges that defendants "gave plaintiff's former husband [greater] access to the children" without cause in order to obtain federal funding via the HRMF initiative. (*Id*. at ¶ 319-321).

### B. Skipp et al. v. Brigham et al. (17-cv-01569) (amended complaint)

Ms. Skipp sets out a complaint against United States District Judge Jeffrey Meyer under the onus of *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971) and 42 U.S.C. § 1983. (ECF No. 7 at ¶ 1-2).[5] In her complaint, Ms. Skipp contends that Judge Meyer "endeavored to obstruct justice, engaged in selective prosecution and colluded with several of the Defendants." (*Id*. at ¶ 7). She also alleges that Judge Meyer discriminated against her based on her disabilities throughout her judicial proceedings before him, thereby violating the ADA. (*Id.* at ¶ 13-15). Finally, Ms. Skipp contends that Judge Meyer's rulings against her constituted discrimination based upon her disability. (*Id.* at ¶ 33).

### C. Skipp et al. v. Tittle et al. (17-cv-01761)

Ms. Skipp also filed a petition for habeas corpus under 28 U.S.C. § 2254 seeking the return of her children into her custody. (ECF No. 1 at ¶ 3.). She alleges that the children are currently residing in Houston, Texas, in the custody of defendants Shawn Tittle and Laura Choi.[6] (*Id.* at ¶ 9-10). Ms. Skipp advances a number of allegations in her petition, all of which center

---

[5] Although the case caption and Ms. Skipp's complaint list Mary Brigham and Mary Brigham Law LLC as defendants, the only defendant named in Ms. Skipp's complaint is Judge Meyer. (ECF. No. 7 at 1). Also, Ms. Skipp's complaint states that she brings her action "against Jeffrey Meyer" and does not specify any other defendants. (*Id.* at ¶ 2). Finally, the only defendant mentioned in the allegations in Ms. Skipp's complaint is Judge Meyer. (*See generally id.*). In light of this, the Court construes Ms. Skipp's complaint as naming only Judge Meyer as a defendant in this action.

[6] Shawn Tittle is the father of Ms. Skipp's children. *See Tittle v. Skipp-Tittle*, No. UWYFA104022992S, 2012 WL 5476915, at *1 (Conn. Super. Ct. Oct. 16, 2012), aff'd, 150 Conn. App. 64 (2014).

around the contention that the divestiture of the children from Ms. Skipp's custody violated her constitutional rights. (*Id.* at ¶ 6-19).

## III. Legal Standard

### A. Rule 12(b)(1)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009), quoting *Makarova v. United States*, 301 F.3d 110, 113 (2d Cir. 2000). A district court may dismiss a case *sua sponte* if it determines that subject matter jurisdiction does not exist. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 701-702 (2d Cir. 2000) ("Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed."). In determining whether subject matter jurisdiction exists, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). A district court may also "refer to evidence beyond the pleadings" in determining whether subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113. "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Tranp. Sys, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### B. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, the Court accepts as true all of the complaint's factual

allegations – but not conclusory allegations – when evaluating a motion to dismiss. *Id*. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010). In cases with a *pro se* plaintiff, "the complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008), quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A district court may dismiss a frivolous action *sua sponte*. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[W]e hold that district courts may dismiss a frivolous complaint *sua sponte*. . . .").[7]

## IV. Discussion

### A. *Rooker-Feldman* Doctrine

The Court lacks subject matter jurisdiction to review the majority of Ms. Skipp's claims in *Skipp v. Brigham et al.* (17-cv-01224). Ms. Skipp alleges in nearly every count of her complaint

---

[7] The Court also possesses the authority to dismiss Ms. Skipp's claims *sua sponte* for frivolousness based on her request to proceed *in forma pauperis* under 28 U.S.C. § 1915(e)(2)(B). See 28 U.S.C. § 1915(e)(2)(B) (court "shall dismiss the case at any time if the court determines that" the action is "frivolous" or "fails to state a claim on which relief may be granted"); *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) ("If [plaintiff] had sought to proceed *in forma pauperis*, dismissal would have been mandatory under 28 U.S.C. § 1915(e)(2).").

7

that defendants discriminated against her by accepting or enforcing the rulings of the Connecticut Superior Court granting custody of her children to her ex-husband.[8] Counts one through eleven and fourteen, in particular, end with the same allegation that the defendants "knew or should have known" that the Connecticut Superior Court did not have jurisdiction over the cases involving Ms. Skipp. (*Id.* at ¶ 172, 184, 193, 217, 243, 269, 282, 283, 269, 300). Counts thirteen and sixteen contend that various state court decisions were motivated by discrimination against Ms. Skipp.

Under the *Rooker-Feldman* doctrine, a federal district court does not possess the authority to reverse a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (internal quotation marks omitted). As a result, if a party's federal claim is "inextricably intertwined" with a state court judgment, a federal district court lacks subject matter jurisdiction to review the claim. *See Hoblock v. Albany County Bd. Of Elections*, 422 F.3d 77, 86 (2d Cir. 2005). Thus, the *Rooker-Feldman* doctrine bars federal district courts from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. The Second Circuit has laid out a four-part standard to determine the applicability of the *Rooker-Feldman* doctrine:

> "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain[] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invite district court review and rejection of [that] judgment[].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced.'— i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."

*Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil*, 544 U.S. at 284). Notably, the doctrine applies when "a federal suit complains of injury from a state-court judgment, even if it appears to complain

---

[8] Many of the counts specifically assail the judges that delivered the adverse opinions in question. (*See, e.g.*, ECF No. 22 at ¶ 149, 164, 175, 181, 187, 195, 202, 207, 224, 235).

8

only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at 88.

Thirteen of the counts in Ms. Skipp's second amended complaint in *Skipp v. Brigham et al.* (17-cv-01224) meet the four factors of the *Rooker-Feldman* doctrine. First, Ms. Skipp lost in several state court proceedings below, as these counts document extensively. Second, the state-court judgments in question were rendered prior to the commencement of the proceedings before this Court in early 2017. Third, by alleging that defendants violated the ADA by following Connecticut state court orders or, in the case of counts thirteen and sixteen, issuing said orders, Ms. Skipp alleges an injury caused by the state-court judgments.[9] *See Hoblock*, 522 F.3d at 85. Finally, in requesting redress against defendants for accepting the dictates of the state court, Ms. Skipp invites the Court to reject those judgments. *Compare id.* at 88 ("[I]f the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child."); *Yaki v. Kondratyeva*, 340 Fed. Appx. 683, 684 (2d Cir. 2009) (*Rooker-Feldman* doctrine barred claim by defendant challenging injuries

---

[9] Ms. Skipp's thirteenth count in *Skipp et al. v. Brigham et al.* (17-cv-01224) does not directly challenge the Connecticut Superior Court decisions granting her ex-husband sole custody of her children but rather the court's alleged failure to provide her with necessary reasonable accommodations under the Rehabilitation Act. As Judge Meyer determined when Ms. Skipp advanced a similar claim in front of him, the *Rooker-Feldman* doctrine bars such challenges to state court determinations of the reasonable accommodations necessary for a party. *See Skipp v. Connecticut Judicial Branch*, No. 3:14-CV-00141 JAM, 2015 WL 1401989, at *6 (D. Conn. Mar. 26, 2015), appeal dismissed (July 6, 2015); *Richter v. Connecticut Judicial Branch*, No. 3:12CV1638 JBA, 2014 WL 1281444, at *8 (D. Conn. Mar. 27, 2014), aff'd, 600 F. App'x 804 (2d Cir. 2015) (dismissing state court plaintiff's claims against state court for violations of the ADA pursuant to *Rooker-Feldman* doctrine); *Watley v. Keller*, 3:13cv1858 (RNC), 2013 WL 6842743, at *2 (D.Conn. Dec. 27, 2013) ("Plaintiffs' claims against the Judicial Branch and Judge Keller directly challenge state court decisions that certain services available under the ADA did not have to be provided to the plaintiffs during the course of their termination proceedings.").

arising out of state court decisions). These counts must therefore be dismissed under Fed. R. Civ. P. 12(b)(1),[10] as this Court does not possess the subject matter jurisdiction to review them.[11]

B. **Immunity**

---

[10] Many of these claims also suffer from other defects that would warrant their dismissal in any event. Under the doctrine of collateral estoppel, a plaintiff may not "relitigat[e] in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003). Collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted)). Ms. Skipp's claims under the ADA and Rehabilitation Act are nearly identical to those she brought in a prior proceeding before this court. *See Skipp v. Connecticut Judicial Branch*, No. 3:14-CV-00141 JAM, 2015 WL 1401989, at *3 (D. Conn. Mar. 26, 2015), appeal dismissed (July 6, 2015). In that case, Ms. Skipp alleged violations of 42 U.S.C. § 1983 based in part upon defendants' purported failure to provide her with reasonable accommodations for her mental illness under the ADA during her various state court proceedings. *See id.* at *3. Judge Meyer dismissed plaintiff's claims in part on the basis that they "would . . . require [him] to sit in judgment of determinations made by state courts respecting accommodations that were made for plaintiff's disability" in violation of the *Rooker-Feldman* doctrine. *See id.* at *6  Since many of Ms. Skipp's claims before this court are identical to those dismissed by Judge Meyer under the *Rooker-Feldman* doctrine, they fall within the ambit of collateral estoppel with respect to that issue here. *See Fulani v. Bentsen*, 862 F. Supp. 1140, 1150 (S.D.N.Y. 1994) (plaintiff bringing claims previously dismissed for lack of standing collaterally estopped from litigating issue of standing); *Jaeger v. Cellco P'ship*, 936 F. Supp. 2d 87, 96 n. 6 (D. Conn. 2013) ("Even where a prior case was dismissed for lack of subject matter jurisdiction, courts have nevertheless 'applied collateral estoppel to the issue of standing.'") (quoting *Hollander v. Members of the Bd. Of Regents of The Univ. of the State of N.Y.*, No. 10-cv-9277 (LTS), 2011 WL 5222912, at *2 (S.D.N.Y. Oct. 31, 2011)) (emphasis omitted). Thus, Ms. Skipp's claims pertaining to alleged discrimination during Connecticut state court proceedings previously raised in her case before Judge Meyer are collaterally estopped.

Finally, even if Ms. Skipp's claims in question were free of the fatal procedural defects listed above, they would still fall under Fed. R. Civ. P. 12(b)(6). The claims do not set out "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

[11] Count thirteen of Ms. Skipp's second amended complaint in *Skipp et al. v. Brigham et al.* (17-cv-01224) also names two federal judges as defendants for allegedly failing to take into account Ms. Skipp's disability. (ECF No. 22, ¶ 302). While this portion of the count is not subject to the *Rooker-Feldman* doctrine, it must be dismissed on the grounds of judicial immunity in any event. *See, infra*, Section B.iii.

10

Ms. Skipp's remaining claims against various state and federal judges, along with persons or entities carrying out court orders on their account, are barred by immunity. This category of claims includes two of the remaining counts in Ms. Skipp's second amended complaint in *Skipp v. Brigham et al.* (17-cv-01224) (counts 12-13), and the lone count contained in her amended complaint in *Skipp v. Brigham et al.* (17-cv-01569). There are two immunity doctrines that preclude Ms. Skipp's claims.

### i. Judicial Immunity

The first of these doctrines is judicial immunity. "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). This doctrine of judicial immunity exists to ensure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.*, quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). Although the doctrine sprang from the common law, see *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (noting the common law origin of judicial immunity), it has also been expanded by statute to include most actions for injunctive relief under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). Judicial immunity is not absolute, however, as judges do not enjoy immunity for "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Bliven*, 579 F.3d at 210, quoting *Stump v. Sparkman*, 435 U.S.

349, 362 (1978). As a general matter, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See id.* at 210.

### ii. Quasi-Judicial Immunity

The doctrine of quasi-judicial immunity extends judicial immunity to "certain others who perform functions closely associated with the judicial process." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)) (internal quotation marks omitted). "To determine which persons are covered under quasi-judicial immunity, 'the Supreme court follows a functional approach, under which [a]bsolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual officer.'" *McKeown v. N.Y. State Com'n on Judicial Conduct*, 377 Fed. Appx. 121, 124 (2d Cir. 2010) (some quotation marks omitted and alterations in original) (quoting *Oliva*, 839 F.2d at 39). Only those officials performing functions "integrally related to an ongoing judicial proceeding" are entitled to quasi-judicial immunity. *Bliven*, 579 F.3d at 210. As a general matter, this category includes officials acting under a court order. *See Bowers v. U.S.*, 931 F. Supp. 2d 358, 367 (D. Conn. 2013) (official executing valid order from a District Court entitled to quasi-judicial immunity); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) (law enforcement officials operating in furtherance of facially valid court order entitled to quasi-judicial immunity).

### iii. Analysis.

The twin doctrines of immunity listed above foreclose several of Ms. Skipp's remaining claims. First, the entirety of the complaint set out in *Skipp et al. v. Brigham et al.* (17-cv-01569) must be dismissed, as it brings a claim against Judge Meyer based solely upon his judicial conduct in Ms. Skipp's cases before him. In directly targeting Judge Meyer's judicial decisions, Ms. Skipp's claim implicates the heart of judicial immunity. Although Ms. Skipp advances various

allegations of discrimination and bad faith against Judge Meyer, such claims are unavailing against the doctrine of judicial immunity. *See Bliven*, 579 F.3d at 209 ("[E]ven allegations of bad faith or malice cannot overcome judicial immunity."). The same logic applies to the inclusion of Judge Meyer and United States Bankruptcy Court Judge Alan Schiff in Ms. Skipp's thirteenth count of her second amended complaint in *Skipp et al. v. Brigham et al.* (17-cv-01224).

Second, Ms. Skipp's claims against various affiliates of the Connecticut Superior Court for their actions carrying out court orders trigger the doctrine of quasi-judicial immunity. Thus, Ms. Skipp's twelfth count of her complaint in *Skipp et al. v. Brigham et al.* (17-cv-01224) must be dismissed, as it assails the Connecticut Association of Family and Conciliation Courts (CAFCC), along with various other related entities,[12] for undertaking actions in response to Connecticut Superior Court orders. *See Collins v. West Hartford Police Dept.*, 380 F. Supp. 2d 83, 91 (D. Conn. 2005) (parties acting as agent of Probate Court entitled to quasi-judicial immunity); *Cleavinger*, 474 U.S. at 200 (quasi-judicial immunity extends to those "who perform functions closely associated with the judicial process"). The state actors named as defendants for their roles in carrying out various court orders throughout Ms. Skipp's complaints also fall under this rationale.[13] Thus, these counts must be dismissed under Fed. R. Civ. P. 12(b)(6) for failing to state a legally valid claim.

C. FERPA

Ms. Skipp's fifteenth count of her second amended complaint in *Skipp et al. v. Brigham et al.* (17-cv-01224) alleges a violation of FERPA against an administrator at her daughter's

---

[12] This count lists the CAFCC, the "Association of Family and Consiliatory Courts (sic)," and several members of the organization. (ECF No. 22, ¶ 302).

[13] The immunity concerns listed above also apply to the vast majority of Ms. Skipp's claims dismissed under the *Rooker-Feldman* doctrine, almost all of which assailed parties for complying with court orders.

elementary school. FERPA, however, does not provide a private right of action. *See Gonzaga University v. Doe*, 536 U.S. 273, 289 (2002) (holding that "FERPA's nondisclosure provisions fail to confer enforceable rights" under 42 U.S.C. § 1983). Thus, this count must also be dismissed under Fed. R. Civ. P. 12(b)(6).

**D.     Habeas**

Ms. Skipp's remaining claim concerns her petition for habeas corpus in *Skipp et al. v. Tittle et al.* (17-cv-01761). This is Ms. Skipp's third petition for habeas corpus relating to the custody of her children filed in this court. Her previous two actions were dismissed by Judge Meyer and myself on the basis of a lack of subject matter jurisdiction. *See Skipp et al. v. Connecticut et al.*, 3:16-cv-1194-MPS (Doc. #7); *Skipp et al. v. Paxton et al.*, 3:16-cv-01619-JAM (Doc. #5). Ms. Skipp's present petition suffers from the same deficiencies as her prior ones.

The Supreme Court has declined to extend the availability of the federal writ to challenges to state child-custody decisions, even those based upon alleged constitutional defects. *See Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 511-12 (1982) ("[E]xtending the federal writ to challenges to state child-custody decisions-challenges based on alleged constitutional defects collateral to the actual custody decision would be an unprecedented expansion of the jurisdiction of the lower federal courts."); *Neustein v. Orbach*, 732 F. Supp. 333, 340 (E.D.N.Y. 1990) ("In *Lehman v. Lycoming County Children's Services*, 458 U.S. 502 (1982), the Supreme Court categorically refused to extend the writ of *habeas corpus* to confer jurisdiction on federal courts to consider collateral challenges to state court judgments that involuntarily terminate parental rights."). Thus, this court lacks the jurisdiction necessary to consider Ms. Skipp's claim.

Even if this were not the case, this Court would lack jurisdiction to consider Ms. Skipp's habeas claim in any event, as the writ is only available within the district of confinement. *See*

*Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (holding that "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement"); *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 361 (S.D.N.Y. 2005) (noting that court lacked jurisdiction over plaintiff's habeas petition for the return of his daughters who lived in Ohio). As Ms. Skipp notes in her petition, her daughters' "place of confinement" is Houston, Texas, which is under the jurisdiction of the Southern District of Texas. (ECF No. 1 at ¶ 9). Thus, Ms. Skipp's habeas complaint must be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).

## WARNING OF LEAVE-TO-FILE INJUNCTION IF PLAINTIFF SKIPP CONTINUES TO MAKE FRIVOLOUS FILINGS

Ms. Skipp has pursued similar claims to those she makes in the present cases repeatedly in both federal and state court. As noted above, Ms. Skipp filed a complaint similar to the present actions in this court two years ago assailing the state court decisions resulting in the loss of Ms. Skipp's custody of her children. *See Skipp v. Connecticut Judicial Branch*, No. 3:14-CV-00141 JAM, 2015 WL 1401989 (D. Conn. Mar. 26, 2015), appeal dismissed (July 6, 2015). She then filed two successive habeas petitions nearly identical to the one in the present case, both of which were dismissed for similar reasons. *See Skipp et al. v. Connecticut et al.*, 3:16-cv-1194-MPS (Doc. #7); *Skipp et al. v. Paxton et al.*, 3:16-cv-01619-JAM (Doc. #5). After filing another suit in Connecticut Superior Court, Ms. Skipp initiated the original action in this case (*Skipp et al. v. Brigham et al.*, 17-cv-01224) by attempting to remove that case to the Southern District of New York.[14] (See ECF No. 2). She then filed the two other actions which the Court disposes of in this case, both of which contain similar allegations to her numerous prior complaints. Although Ms.

---

[14] Chief Judge McMahon of the Southern District of New York construed the order as a new civil complaint and transferred the matter to this court. (*See* ECF # 4).

15

Skipp's complaints are not a carbon copy of her previous actions in state and federal court, they present a very similar attempt to use this court to conduct an end run around the state courts that have addressed her claims over the past several years. Ms. Skipp's suits also target a number of defendants who have repeatedly had to defend against her meritless claims for some time now.

Although a *pro se* party must always be granted more leniency than a party represented by counsel, *see, e.g.*, *Coombe*, 174 F.3d at 280, the Court will not hesitate to impose sanctions in response to vexatious litigation. In particular, the Court has authority to impose a leave-to-file injunction upon Ms. Skipp under the All Writs Statute. *See Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) ("The equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute, 28 U.S.C. s 1651(a)."). A leave-to-file injunction could prevent Ms. Skipp from filing any further suits in this Court that arose from the same events that have been the subject of these and previous actions, except under certain, restrictive conditions. If Ms. Skipp makes any further filings in this Court (except a notice of appeal) setting forth similar allegations, she will leave the Court with little choice other than to exercise this power.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's actions referenced herein are dismissed.

The clerk is directed to mail a copy of this order, return receipt requested, to Plaintiff, and file proof of mailing and the return receipt on the docket.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
October 26, 2017